## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

WENDY BINNER,

    Plaintiff,

  v.

KILOLO KIZAKAZI,

    Defendant.

CIVIL ACTION NO. 3:22-CV-00122

(MEHALCHICK, M.J.)

## MEMORANDUM

Plaintiff Wendy Binner ("Binner") brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. (Doc. 1). On February 9, 2022, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 6). For the following reasons, the Commissioner's decision will be **AFFIRMED**.

I. **BACKGROUND AND PROCEDURAL HISTORY**

On September 4, 2019, Binner protectively filed an application for Title II disability insurance benefits, claiming disability beginning August 15, 2016. (Doc. 8-2, at 16). The Social Security Administration ("SSA") initially denied her application on January 23, 2020, and upon reconsideration on August 18, 2020. (Doc. 8-2, at 16). On September 4, 2020, Binner filed a request for a hearing which Administrative Law Judge ("ALJ") Theodore Burock held on December 8, 2020. (Doc. 18-2, at 16). In a written opinion dated June 28, 2021, the ALJ determined that Binner "has not been under a disability, as defined in the Social Security Act, from August 15, 2016, through the date of this decision," and therefore not

entitled to benefits under Title II. (Doc. 8-2, at 27). On November 29, 2021, the Appeals Council denied Binner's request for review. (Doc. 8-2, at 2).

On January 23, 2022, Binner filed the instant complaint. (Doc. 1). The Commissioner responded on March 30, 2022, providing an answer and the requisite transcripts from Binner's disability proceedings. (Doc. 7; Doc. 8). The parties then filed their respective briefs, with Binner raising two bases for reversal or remand. (Doc. 12; Doc. 15).

II.  **STANDARDS OF REVIEW**

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).[1] Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

A.  **ADMINISTRATIVE REVIEW**

In evaluating whether a claimant is disabled, the "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

    B.   JUDICIAL REVIEW

The Court's review of a determination denying an application for benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620

(1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before the Court, therefore, is not whether Binner was disabled, but whether the Commissioner's determination that Binner was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

## III.   THE ALJ'S DECISION

In his written decision, the ALJ determined that Binner "has not under a disability, as defined in the Social Security Act, from August 15, 2016, through the date of this decision." (Doc. 8-2, at 27), The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At the outset, the ALJ determined that Binner meets the insured status requirements of the Social Security Act through December 31, 2023. (Doc. 8-2, at 19).

### A. STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in SGA, the claimant is not disabled, regardless of age, education, or work experience. SGA is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 404.1520(b). In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574. Here, the ALJ determined that Binner "has not engaged in substantial gainful activity since August 15, 2016, the alleged onset date." (Doc. 8-2, at 19). Thus, the ALJ's analysis proceeded to step two.

### B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that the claimant does not have an impairment or combination of impairments that significantly limits his or her "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 404.1520(c). If a claimant establishes a severe impairment or combination of impairments, the ALJ analysis continues to the third step. Here, the ALJ concluded that Binner had the following severe impairments: "lumbar degenerative disc disease, thoracic burst vertebra, and obesity." (Doc. 8-2, at 19). In addition, the ALJ determined that Binner had the following non-severe impairments: "major depressive disorder and generalized anxiety disorder." (Doc. 8-2, at 20).

C.   STEP THREE

At step three, the ALJ must determine whether an impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. Part 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 404.1526. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. § 404.1520(d). Otherwise, the ALJ must proceed to the fourth step of the analysis. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that none of Binner's impairments, considered individually or in combination, meet or equal the severity of a listed impairment. (Doc. 8-2, at 21). The ALJ considered the listings under section 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root(s)) and Social Security Ruling 19-2p. (Doc. 8-2, at 21-22).

D.   RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the evidence presented. At this intermediate step, the ALJ considers "all [the claimant's] symptoms . . . and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). This involves a two-step inquiry where the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 404.1529(b)–(c).

Here, Binner alleged that her impairments caused the following symptoms: difficulty lifting, squatting, bending, standing, walking, sitting, climbing stairs, and completing tasks; inability to lift anything over 10 pounds and stand or walk for more than 10 minutes; inability stand or sit for prolonged periods; and symptoms of depression and anxiety, including preoccupations and crying spells. (Doc. 8-2, at 2-23). The ALJ found that while Binner's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 8-2, at 23). The ALJ concluded that Binner has the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a)," subject to the following non-exertional limitations:

> [Binner] can only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; can never climb ladders/ropes/scaffolds; must avoid all exposure to hazards such as heights or machinery; must avoid concentrated exposure to temperature extremes; and is limited to the performance of routine, repetitive tasks.

(Doc. 8-2, at 22).

E.   STEP FOUR

Having assessed a claimant's RFC, step four requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is defined as work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). "If the claimant can perform his [or her] past relevant work despite

his [or her] limitations, he [or she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, the ALJ found that through the date last insured, Binner was unable to perform any past relevant work. (Doc. 8-2, at 26). The ALJ noted that Binner had past relevant work as an phlebotomist and medical assistant, but the requirements exceeded Binner's RFC. (Doc. 8-2, at 26). Thus, the ALJ proceeded to step five of the sequential analysis.

F.   STEP FIVE

At step five of the sequential analysis process, the ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 404.1560(b)(3). If a claimant can adjust to other work, he or she will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v). Here, the ALJ made vocational determinations that Binner was 39 years old on the date last insured, which is defined as a younger individual age 18-44. (Doc. 8-2, at 26). Considering Binner's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Binner can perform. (Doc. 8-2, at 26). In making this determination, the ALJ relied on the expertise of the vocational expert, who testified that Binner could perform the requirements of occupations such as a (1) carding machine operator; (2) optical goods final assembler; and (3) dowel inspector, which are occupations with open positions ranging from 16,000 to 40,000 nationally. (Doc. 8-2, at 27). Accordingly, the ALJ determined that Binner has not been under a disability during the relevant period and denied her application for benefits. (Doc. 8-2, at 27).

IV.   **DISCUSSION**

On appeal, Binner advances two bases to argue that the decision of the ALJ is not supported by substantial evidence. (Doc. 12). First, Binner argues the ALJ erred and abused his discretion by failing to consider her physical limitations, including lumbar degenerative disc disease, thoracic burst vertebra and obesity, and mental limitations, including depression and anxiety, in setting forth Binner's RFC. (Doc. 12, at 14-25). Second, Binner contends "[t]he record should have been re-opened in this matter due to the receipt of the Functional Capacity Evaluation, which was submitted into the record following the decision from the ALJ, as the Functional Capacity Evaluation is relevant, and as the record had been left open by the ALJ for receipt of the Functional Capacity Evaluation." (Doc. 12, at 25-28). In response, the Commissioner maintains that substantial evidence supports the ALJ's unfavorable decision. (Doc. 15).

A.   SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S EVALUATION OF BINNER'S IMPAIRMENTS.

First, Binner contends the ALJ erroneously evaluated Binner's physical and mental impairments at Step Two of the sequential evaluation process, and failed to incorporate those impairments into Binner's RFC. (Doc. 12, at 14-25). Regarding the severe impairments identified by the ALJ, Binner argues that the medical records warrant more significant exertional and non-exertional limitations, which are further supported by her testimony. (Doc. 12, at 14-22). Regarding the non-severe impairments identified by the ALJ, Binner avers that the medical record and her testimony supports a finding that those impairments cause more than a minimal effect on her ability to do basic work activities and that the ALJ failed to include sufficient exertional or non-exertional limitations in setting forth Binner's RFC.

(Doc. 12, at 23-24). In response, the Commissioner argues that the ALJ fully understood and discussed Binner's medical history, fusion surgery, related pain, obesity, and subjective complaints, and that substantial evidence supports the ALJ's evaluation of Binner's impairments in formulating the RFC. (Doc. 15, at 13-14).

In step two of the evaluation process, an ALJ is required to consider whether a claimant's impairments are (1) medically determinable[2] and (2) severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521. An impairment is not considered severe if it does not significantly impact a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If an ALJ determines that a claimant has a severe condition at step two, then the sequential analysis proceeds to step three. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521. As such, generally "[a] failure to find a medical condition severe at step two will not render a decision defective if some other medical condition was found severe at step two." *Weitzel v. Colvin*, 967 F. Supp. 2d 1089, 1097 (M.D. Pa. 2013).

However, finding that an impairment is non-severe at step two "does not obviate the need for a separate analysis of how Plaintiff's impairment affects her RFC." *Soboleski v. Comm'r of Soc. Sec.*, No. 14-3156, 2015 WL 6175904, at *2 (D.N.J. Oct. 20, 2015); *see also Hess*, 931 F.3d at 209 (explaining that because the functional limitation findings at step two and the

---

[2] Under the regulations, a medically determinable impairment is evaluated as follows:

> Your [medically determinable] impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).

20 C.F.R. § 404.1521.

RFC assessment at step four "serve distinct purposes and may be expressed in different ways . . . the findings at steps two and three will not necessarily translate to the language used at steps four and five."). Indeed, under the regulations, an ALJ is required to assess all of a claimant's medically determinable impairments – including those that are not severe – in combination when making the subsequent RFC determination. *See* 20 C.F.R. § 404.1545(a)(2); *see also Weitzel*, 967 F. Supp. 2d at 1097 ("[A]ll of the medically determinable impairments both severe and non-severe must be considered at step two and then at step four when setting the residual functional capacity."). As further explained by SSR 96-8p:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "non severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96–8p, 1996 WL 374184 (emphasis added).

Thus, "[e]ven if the ALJ properly determines that a claimant's impairments are non-severe [at step two] ... a finding of non-severity does not eliminate those impairments from consideration of his or her overall ability to perform past work." *Marsella v. Comm'r of Soc. Sec.*, No. CV 18-2294 (JBS), 2019 WL 912141, at *9 (D.N.J. Feb. 25, 2019) (emphasis added). Similarly, "where the disability analysis continues to [s]tep [three], an ALJ's erroneous determination of an impairment's non-severity may constitute harmless error, provided that the impairment continues to be factored in." *Rodriguez v. Berryhill*, No. CV 17-6884-KM, 2019 WL 1013343, at *9 (D.N.J. Mar. 1, 2019) (emphasis added); *see also Rutherford v. Barnhart*,

399 F.3d 546, 552–53 (3d Cir. 2005) (failing to determine the severity of a condition at stage two was harmless because the ALJ properly considered it in the evaluation of the claimant's limitations). However, where it appears that the ALJ's error at step two also influenced the ALJ's RFC analysis, the reviewing court may remand the matter to the Commissioner for further consideration. *McClease v. Comm. of Soc. Sec.*, No. 08-1673, 2009 WL 3497775, at *11 (E.D. Pa. Oct. 28, 2009) (citing *Nosse v. Astrue*, No. 08-cv-1173, 2009 WL 2986612, at *13 (W.D. Pa. Sept. 17, 2009) ("Until the ALJ explains why plaintiffs mental conditions are not severe ... and provides reasons for rejecting [doctor's] diagnoses and opinions, the court is unable to determine whether the ALJ's RFC determination is supported by substantial evidence.")).

Here, at step two of the sequential evaluation process, the ALJ found that Binner's "medically determinable mental impairments of major depressive disorder and generalized anxiety disorder, considered singly and in combination, do not cause more than minimal limitation in [Binner]'s ability to perform basic mental work activities and are therefore non-severe." (Doc. 8-2, at 20). In making this finding, the ALJ considered the broad functional areas of mental functioning set out in the disability regulation for evaluating mental disorders and in the Listing of Impairments, known as the "paragraph B" criteria. (Doc. 8-2, at 20); *see* 20 CFR, Part 404, Subpart P, Appendix 1. Specifically, the ALJ considered the medical evidence of record, including Binner's inpatient psychiatric hospitalization records, and the medical opinions of John Laurence Miller, PhD ("Dr. Miller"), Kathleen Ledermann, PsyD ("Dr. Ledermann"), and the two State agency psychological consultants. (Doc. 8-2, at 21). The ALJ found that "[b]ecause [Binner]'s medically determinable mental impairments cause

no more than 'mild' limitation in any of the functional areas *and* the evidence does not otherwise indicate that there is more than a minimal limitation in [Binner]'s ability to do basic work activities, they are nonsevere." (Doc. 8-2, at 21).

In contrast, Binner avers that the ALJ erred in finding that her mental impairments were non-severe. (Doc. 12, at 24). First, Binner claims the record supports a finding that Binner still has issues with her thoracic and lumbar spine, which limits her physically on a daily basis and worsens with activity. (Doc. 12, at 24). Next, Binner claims her depression, anxiety, and sleep disturbance are limiting in nature and a finding of severe impairment is consistent with her testimony and medical record. (Doc. 12, at 24).

Even if the ALJ's finding that Binner's depression, anxiety, additional thoracic issues, and sleep disturbance were non-severe was erroneous, the ALJ continued to step three as he found that Binner had severe impairments of lumbar degenerative disc disease, thoracic burst vertebra, and obesity. (Doc. 8-2, at 19-20). Therefore, any error in finding Binner's impairments non-severe may be considered harmless. *See Weitzel*, 967 F. Supp. 2d at 1097. However, the Court turns to whether the ALJ considered Binner's non-severe impairments of depression, anxiety, additional thoracic issues, and sleep disturbance in the RFC determination. "[T]he Commissioner's procedures do not permit the ALJ to simpl[y] rely on his finding of non-severity as a substitute for a proper RFC analysis." *Kich v. Colvin*, 218 F. Supp. 3d 342, 355 (M.D. Pa. 2016) (citing *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013)); *see also Soboleski*, 2015 WL 6175904, at *2 (the ALJ's "simple phrase in the step two analysis does not obviate the need for a separate analysis of how Plaintiff's impairment affects her RFC.").

Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). " '[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).' " *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018).

In *Cotter v. Harris*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." 642 F.2d 700, 704, 706-707 (3d Cir. 1981). However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp*, 204 F.3d at 83. "There is no

requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). In making the RFC determination, "the ALJ must consider all evidence before him." *Burnett*, 220 F.3d at 121 (citations omitted); 20 C.F.R. § 404.1527(c); *see also Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence.... The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects.").

As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96- 5p do not apply to newly filed or pending claims after March 27, 2017). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. § 404.1520c(b). The Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The

- 15 -

most important of these factors is the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. § 404.1520c(b)(3). To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter*, 642 F.2d at 704, 706-707. An ALJ need not undertake an exhaustive discussion of all the evidence or "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see Hur*, 94 F. App'x at 133 ("There is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record."). However, an ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see, e.g., Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262 (3d Cir. 2006) ("The only requirement is that, reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings.").

Here, the ALJ adequately considered Binner's mental and physical limitations in his RFC determination, explaining:

> The objective signs, the clinical findings and observations, the claimant's relatively conservative treatment history following her timely surgery, the

- 16 -

opinions of the State agency medical and psychological consultants, the third party observations, and the claimant's own admissions regarding her retained capacity for work activity, personal care activities, childcare, and daily household chores support this assessment.

(Doc. 8-2, at 23-26).

First, regarding Binner's subjective complaints, the ALJ considered the following:

[Binner] alleges disability due to a back injury, depression, and anxiety (Exhibit B3E). Due to her impairments, [Binner] stated she has difficulty lifting, squatting, bending, standing, walking, climbing stairs, and completing tasks. She reported she is unable to lift anything over 10 pounds and cannot stand or walk for more than 10 minutes. [Binner] alleges she is unable to work because she cannot stand or sit for prolonged periods (Exhibit B7E). At the hearing, [Binner] testified she suffers from symptoms of depression and anxiety including preoccupations and crying spells. She stated that due to her symptoms, she needed to call off work. She testified she can stand for no more than 10 minutes; can lift no more than 5 pounds; and has been able to work no more than 20 hours per week. When she is not working, [Binner] testified she lays down at home on a heating pad (Hearing Testimony).

(Doc. 8-2, at 22-23).

The ALJ concluded that while Binner's medically determinable impairments could reasonably be expected to cause the alleged symptoms, "[Binner]'s statements concerning the intensity, persistence, and limiting effects of those symptoms "are not entirely consistent with the medical evidence and other evidence in the record." (Doc. 8-2, at 23).

Next, the ALJ considered Binner's activities of daily living:

Despite [Binner]'s impairments and alleged limitations, [Binner] admitted at the hearing and in the record that she lives in a home as the sole parent with her 9-year-old son. In addition to providing primary care for her son, [Binner] admitted she remains capable of performing her own personal care activities, preparing daily meals, performing the majority of the household chores, washing dishes, driving a car, traveling independently, shopping in stores, managing household money, and engaging in regular social activities with her friends (Exhibit B7E; Hearing Testimony). Sydnee Fuhrman, [Binner]'s adult daughter, also submitted a statement indicating [Binner] has no difficulty performing her own personal care activities and indicating [Binner] retains the

ability to prepare meals, clean her home, launder clothes, drive a car, travel independently, shop in stores, manage money, and engage in daily social activities with friends (Exhibit B5E).

That [Binner] is capable of preparing meals suggests [Binner] is capable of following simple instructions consistent with a recipe or package directions. That [Binner] can shop in stores for groceries suggests [Binner] is capable of identifying purchase needs, making a list, selecting food items, managing money, and interacting appropriately with checkout personnel. That [Binner] is capable of performing routine household activities such as laundering clothes, cleaning, and washing dishes suggests [Binner] is capable of sustaining the attention and concentration necessary to perform and complete the simple activities and remains able to utilize simple machinery safely. Additionally, [Binner]'s participation in social activities with friends suggests [Binner] has a good capacity for maintaining relationships and acting appropriately in social settings. That [Binner] is able to travel independently and drive a car suggests [Binner] is capable of making a travel plan, executing the plan, and adapting to changes and variables in the situation including other drivers on the road, road closures, or changed travel schedules.

(Doc. 8-2, at 23).

In addition, the ALJ noted:

while [Binner] testified at the hearing that she has been unable to work more than 20 hours per week due to her impairments, her weekly paystubs demonstrate she has worked more than 30 hours in given weeks at least 18 times in the year preceding her hearing. Her paystubs also demonstrate she worked more than 40 hours during 12 of those weeks, showing a good capacity for sustained full-time work activity (Exhibit B8D). This work activity does not support [Binner]'s allegations of an inability to work a full-time position.

(Doc. 8-2, at 23-24).

The ALJ found that Binner's activities of daily living "suggest [Binner] retains a greater capacity for physical, cognitive, social, and adaptive skills than alleged in connection with their disability application and appeal; do not suggest a degree of impairment consistent with a finding of disability; and further support the above assessment of [Binner]'s [RFC]." (Doc. 8-2, at 23).

- 18 -

Next, upon consideration of the objective medical evidence of record, the ALJ further found that such evidence does not support Binner's allegations regarding the intensity, persistence, and limiting effects of her impairments. (Doc. 8-2, at 24). Specifically, the ALJ addressed the records from a motor vehicle collision that took place on Binner's alleged onset date, vital measurements showing Binner as obese, physical therapy records, neurosurgical records, ongoing care records, and medications. (Doc. 8-2, at 24). The ALJ further reviewed the medical opinions provided by Karena Hammon, NP, and the January 2020 and August 2020 State agency medical consultants. (Doc. 8-2, at 25).

On January 6, 2020, Hammon completed a consultative medical evaluation. (Doc. 8-8, at 28-38). Hammon noted that, during the interview, Binner reported continuing to utilize a TENS unit for her symptoms of back and lower extremity pain, but noted she did not use any other assistance device or support garments. (Doc. 8-8, at 28, 34). On psychical examination, Hammon observed Binner to be present in no more than mild distress with slow but steady gait, normal stance, and a good capacity for postural transfers; a capacity for only 40 percent of a squat, but showed no evidence of joint deformity, instability, or tenderness; full strength, no evidence of sensory or reflex loss, and no evidence of muscle atrophy or impaired dexterity; and some loss of lumbar range of motion, but intact upper and lower extremity ROM and cervical ROM. (Doc. 8-8, at 30-31). Hammon diagnosed Binner with (1) chronic back pain following a T12 burst fracture and spinal fusion, and (2) depression and anxiety. (Doc. 8-8, at 31). Hammon opined that Binner retained the capacity to lift/carry up to 10 pounds occasionally; sit for 4 hours, stand for 3 hours, and walk for 1 hour during an 8-hour workday; frequently perform right lower extremity foot control operations; never stoop

or crouch; occasionally climb, balance, kneel, and crawl; and tolerate only occasional exposure to unprotected heights; and tolerate no more than frequent exposure to moving mechanical parts, operation of a motor vehicle, and vibrations. (Doc. 8-8, at 33-37). Finally, Hammon noted that Binner is able to perform the following activities: shop; travel without a companion for assistance; ambulate without using a wheelchair, walker, or 2 canes or 2 crutches; walk a block at a reasonable pace on rough or uneven surfaces; use standard public transportation; climb a few steps at a reasonable pace with the use of a single hand rail; prepare a simple meal and feed herself; care for her personal hygiene; and sort, handle, or use papers/files. (Doc. 8-8, at 38).

On January 23, 2020, State agency consultant, Karen Plowman, PsyD ("Dr. Plowman"), completed a disability determination explanation. (Doc. 8-3, at 3). On August 18, 2020, State agency consultant, John Gavazzi, PsyD ("Dr. Gavazzi"), completed a disability determination explanation. (Doc. 8-3, at 24). The State agency consultants opined that Binner can occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for a total of 6 hours in an 8-hour workday, sit for a total of 6 hours in an 8-hour workday, and unlimited ability to push and/or pull. (Doc. 8-3, at 18, 34). They opined that Binner's postural limitations include occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, and never climb ladders/ramps/scaffolds. (Doc. 8-3, at 19, 34-35). The State agency consultants found that Binner does not have any manipulative, visual, or communicative limitations, but did have environmental limitations, including needing to avoid concentrated exposure to extreme cold, heat, and hazards (machinery, heights, etc.). (Doc. 8-3, at 19-20, 35-36). Thus, Dr. Plowman and Dr. Gavazzi

opined that Binner demonstrates the maximum sustained work capability for light work and determined that Binner is not disabled. (Doc. 8-3, at 21-22, 38).

The Court finds that the ALJ's evaluation of Hammon's and the two state agencies' opinions comported with the new regulatory scheme and is supported by substantial evidence. (Doc. 8-2, at 25). "Nothing in the Social Security Act or governing regulations requires the ALJ to obtain matching 'opinion' evidence in order to fashion a claimant's RFC." *Myers v. Berryhill*, 373 F. Supp. 3d 528, 538 (M.D. Pa. 2019). "[T]he ALJ is responsible for making an RFC determination . . . and he is not required to seek a separate expert medical opinion." *Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003); *see Butler v. Colvin*, 3:15-CV-1923, 2016 WL 2756268, at *13 n.6 (M.D. Pa. May 12, 2016) (rejecting the argument that a medical opinion is required to craft an RFC). "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). An ALJ "is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011). The ALJ is expressly not required to "seek outside expert assistance." *Chandler*, 667 F.3d at 362 (citing 20 C.F.R. §§ 404.1546(c), 404.1527(d), and SSR 96-5p).

The ALJ found that Hammon's opinion is not persuasive. (Doc. 8-2, at 25). In evaluating her opinion, the ALJ determined its persuasiveness by considering both the consistency and supportability of the opinion. Regarding supportability, the ALJ explained that Hammon's opinion "limits [Binner] to postural activities totaling exactly 8 hours when [Binner]'s own work and earnings records demonstrate that at the time of the examination,

with [Binner]'s admitted performance of daily household activities and childcare, demonstrate a greater capacity for exertional and non-exertional activities." (Doc. 8-2, at 25). Additionally, the ALJ articulated why the opinion was consistent with the record, noting that "[Binner]'s ongoing treatment records showing good relief of symptoms with radiofrequency ablation procedures. [Binner] received an ablation in September 2019 and has not presented back to her physicians since that time with complaints of returned or persistent symptoms." (Doc. 8-2, at 25). Therefore, the ALJ's evaluation of the medical opinion of Hammon comported with the Social Security Regulations. 20 C.F.R. §§ 404.1520c(b)(2).

The ALJ found that the opinions of Dr. Plowman and Dr. Gavazzi, the January 2020 and August 2020 State agency medical consultants, are persuasive. (Doc. 8-2, at 25). The ALJ found that "[t]he opinions are consistent with [Binner]'s treatment history, noted response and improvement with medial branch blocks and radiofrequency ablation procedures, and present work history including the ability to perform a range of light work on an intermittently full-time basis." (Doc. 8-2, at 25). However, the ALJ found that "in order to full accommodate the fact that [Binner] does not consistently work a full-time schedule, presumably due to her medical conditions, the [ALJ] has further limited [Binner] to sedentary work activity, the need to avoid all exposure to hazards, and the performance of no more than routine, repetitive tasks." (Doc. 8-2, at 25). The ALJ noted that "[w]hile [Binner]'s mental health impairments are decidedly non-severe, the restriction to routine, repetitive tasks accommodates [Binner]'s perception of pain." (Doc. 8-2, at 25). The Court finds that the ALJ's evaluation of the medical opinion of the State agency medical consultants comported with the Social Security Regulations. 20 C.F.R. §§ 404.1520c(b)(2).

- 22 -

In conclusion, the ALJ explained that the record supports his RFC determination because "[t]he record demonstrates the claimant suffers from chronic pain noting a history of thoracic vertebra fracture and lumbar degenerative disc disease as well as obesity resulting in pain, slowed gait, and impaired lumbar range of motion." (Doc. 8-2, at 26). Specifically, the ALJ explained:

> The record does not support the allegations regarding the intensity, persistence, and limiting effects of the claimant's impairments. While [Binner] sustained a significant thoracic vertebra fracture, she underwent a timely and successful surgery. Her follow-up treatment has remained conservative and [Binner] has reported good response to further branch blocks and radiofrequency ablation procedures. [Binner] does not require more than prescription pain management and TENS therapy for continuing care and has demonstrated an ability to maintain at least part-time work activity over the year prior to the hearing with intermittent periods of fulltime employment in addition to her home responsibilities including primary care of her child, meal preparation, cleaning, shopping, and independent travel.

(Doc. 8-2, at 25-26).

Binner argues that the ALJ failed to consider the effects of her depression, anxiety, additional thoracic issues, and sleep disturbance in combination with her severe impairments when formulating the RFC. (Doc. 12, at 24). Binner further avers that these additional disorders "clearly cause more than a slight limitation in terms of [Binner]'s RFC, and could reasonably be expected to impact [Binner]'s ability to remain on task, or to complete work of a certain skill level for at least some portion of the workday." (Doc. 12, at 24). In addition, regarding his severe limitations, Binner argues that the medical record and subjective testimony warrant more significant limitations than those noted by the ALJ. (Doc. 12, at 16-20). Binner contends the ALJ further erred by failing to properly consider her non-exertional limitations. (Doc. 12, at 20-21).

However, contrary to Ortiz-Rivera's argument, simply finding an opinion persuasive does not mean that the ALJ must accept the persuasive medical opinion wholesale. *See Wilkinson v. Commissioner of Social Security*, 558 Fed. App'x 254, 256 (3d Cir. 2014) (finding "no rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gave the source's opinion as a whole 'significant' weight."). Here, the ALJ considered Binner's subjective complaints, activities of daily living, objective medical records, and medical opinions in formulating the RFC determination. (Doc. 8-2, at 23-26). The ALJ accounted for limitations related to Binner's lumbar degenerative disc disease, thoracic burst vertebra, and obesity—impairments the ALJ found severe at step two—which are support by Binner's activities of daily living, objective medical record, and medical opinions. (Doc. 8-2, at 23-25). In addition, the ALJ accounted for limitations related to Binner's depression and anxiety—impairments the ALJ found non-severe at step two—because the ALJ noted that although Binner exhibited a depressed or anxious mood at some examinations, the portions of the examination relating to her ability to perform basic work activities were all consistently within normal limits. (Doc. 8-2, at 23-25). Further, the ALJ found persuasive the findings of the State agency psychologists, which did not find that Binner had disabling limitations, but further limited Binner to sedentary work activity, the need to avoid all exposure to hazards, and the performance of no more than routine, repetitive tasks in order to fully accommodate Binner's impairments. (Doc. 8-2, at 25). In sum, the ALJ was confronted by a range of subjective complaints, objective medical records, and several medical opinions, which included varying limitations based on Binner's impairments, and the ALJ's evaluation comported with the Social Security Regulations. 20 C.F.R. § 404.1520c(b)(2).

- 24 -

The Court notes again that "[t]he ALJ – not treating or examining physicians or State agency consultants–must make the ultimate disability and RFC determinations." *Chandler, 667 F.3d at 361*. Moreover, the ALJ's evidentiary evaluation was supported by substantial evidence; that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). To the extent that Binner asks the Court to reweigh the evidence and arrive at a different conclusion, courts "are not permitted to re-weigh the evidence or impose their own those factual determinations" in reviewing disability appeals. *Chandler*, 667 F.3d at 359.

Accordingly, the Court finds that substantial evidence supports the ALJ's evaluation of Binner's physical and ental limitations in formulating her RFC determination.

B.   BINNER'S POST-HEARING SUBMISSION TO THE APPEALS COUNCIL DOES NOT SATISFY THE REQUIREMENTS FOR REMAND.

Binner contends the ALJ should have re-opened the record due to the receipt of a Functional Capacity Evaluation that was submitted into the record following the ALJ's decision. (Doc. 12, at 25, 28; Doc. 13). Binner contends:

> The Functional Capacity Evaluation, which was determined to be an accurate reflection of [Binner]'s physical capabilities, as confirmed by consistency tests, is relevant to the [ ] very heart of the issue in this matter, which is [Binner]'s ability to work on a sustained basis, and [Binner] has shown good cause for not submitting it to the ALJ prior to his decision, as it was not completed prior to the ALJ's decision on June 28, 2021, despite the best efforts of [Binner], and her legal counsel, to have it completed prior to the decision in this matter.

(Doc. 12, at 27-28).

In opposition, the Commissioner argues that Sipes' evaluation, which post-dates the ALJ's decision, is not material evidence because she evaluated Binner's functional abilities as of the date of her examination, which was after the ALJ's decision. (Doc. 15, at 26). In addition,

- 25 -

the Commissioner avers that Binner failed to demonstrate good cause for untimely submitting the evaluation after the ALJ issued his decision. (Doc. 15, at 27-28).

Binner seeks reversal and remand of an adverse disability benefits decision under sentence four of § 405(g), which provides that "[t]he court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (sentence four). In reviewing such a decision under sentence four, the statute provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (sentence five). It is well-established that "evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence." *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001) (citing *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991)); *Orndorff v. Colvin*, 215 F. Supp. 3d 391, 406 (M.D. Pa. 2016) ("When the Appeals Council denies review, evidence that was not before the ALJ may only be used to determine whether it provides a basis for remand under sentence six of section 405(g).") (citation omitted); *see also United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963) ("[A] decision may be supported by substantial evidence even though it could be refuted by other evidence that was not presented to the decision-making body.").

At the administrative hearing held on December 8, 2020, Binner's representative requested the ALJ keep the record open an additional thirty (30) days to allow Binner an opportunity to undergo and submit records from a functional capacity evaluation. (Doc. 8-2, at 36). The ALJ agreed to keep the record open for the requested timeframe, and later received

requests for extensions of time on January 5, 2021, February 9, 2021, March 24, 201, and April 22, 2021, all of which were granted, noting Binner was having difficulty having the evaluation performed due to insurance coverage and having contracted COVID-19. (Doc. 8-2, at 16-17, 36; Doc. 8-6, at 113-15). On May 12, 2021, the ALJ received a final correspondence from Binner's representative indicating Binner is now uncertain she will ever obtain a referral for a functional capacity evaluation and stating, "I understand if you would close the record, based upon the above, and move forward with a decision at this time." (Doc. 8-6, at 116). In the unfavorable, written decision issued on June 28, 2021, the ALJ declined to admit any possible functional capacity evaluation "now or in the future" as the requirements of 20 C.F.R. § 404.935(b) are not met and "such evidence is, therefore, not appropriate for association with this particular claim record." (Doc. 8-2, at 17). The ALJ further explained:

> Despite having kept the record open to allow for the possibility of a functional capacity evaluation, the [ALJ] now finds it would be inappropriate to admit this evidence now or in the future, should it ever be submitted in conjunction with the current claim, protectively filed on September 4, 2019. The evidence did not exist at the time of the hearing set for this case; the lack of its existence was not based on any misleading action of the Social Security Administration; the lack of its existence was not due to a physical, mental, educational, or linguistic limitation of [Binner]; and while unusual circumstances prevented [Binner] from obtaining the evidence, there were no unusual circumstances beyond [Binner]'s control that would have prevented her from submitting the evidence timely, had it been obtained prior to the scheduled hearing.

(Doc. 8-2, at 17).

The Functional Capacity Evaluation at issue here was completed on August 4, 2021, and submitted to the Appeals Council *after* the ALJ issued his written decision. (Doc. 13). The Appeals Council declined to review the ALJ's determination that Binner was not

disabled. (Doc. 8-2, at 2). The Court has no authority to review that decision by the Appeals Council. *Matthews*, 239 F.3d at 594 ("No statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review.").

This evidence is nevertheless made part of the administrative record to facilitate potential review under sentence six of § 405(g), which provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

> 42 U.S.C. § 405(g) (sentence six).

Thus, "when the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ (Sentence Six review)." *Matthews*, 239 F.3d at 593-94 ("The new and material evidence is transmitted with the record so that the district court will have before it the evidence that will be the subject of the remand if the claimant can show good cause why such new and material evidence was not submitted to the ALJ."); *Orndorff*, 215 F. Supp. 3d at 406 ("Sentence Six requires a remand when evidence is 'new' and 'material,' if the claimant has demonstrated 'good cause' for not having incorporated the evidence into the administrative record."). To merit a sentence six remand,

> the evidence must first be "new" and not merely cumulative of what is already in the record. Second, the evidence must be "material;" it must be relevant and probative. Beyond that, the materiality standard requires that there be a reasonable probability that the new evidence would have changed the outcome of the [Commissioner's] determination. An implicit materiality requirement is that the new evidence related to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition. Finally[,]

the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record.

*Szubak v. Sec'y of Health & Hum. Servs.*, 745 F.2d 831, 833 (3d Cir. 1984) (per curiam) (citations omitted).

In this case, Binner has utterly "failed to allege or establish that this evidence was new, material, and omitted for good cause." *Orndorff*, 215 F. Supp. 3d at 406.

Based on the Court's own review of the evidence at issue, much of it is clearly immaterial because it relates to Binner's condition *after* the ALJ rendered his decision, rather than the time period for which benefits were denied. (Doc. 13); *see Appau v. Comm'r Soc. Sec.*, 847 Fed. App'x 149, 152 (3d Cir. 2021) (per curiam); *Orndorff*, 215 F. Supp. 3d at 406; *see also Szubak*, 745 F.2d at 833. Materiality requires that the evidence create a reasonable probability that it would have changed the ALJ's decision had it been presented to him. *Szubak*, 745 F.2d at 833; *see also* 20 C.F.R. § 404.970(a)(5). "An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied," and that it not document "a later-acquired disability or . . . the subsequent deterioration of the previously non-disabling condition." *Szubak*, 745 F.2d at 833; *see also Lisnichy v. Comm'r of Soc. Sec.*, 599 F. App'x 427, 429 (3d Cir. 2015).

Here, the Functional Capacity Evaluation at issue here was completed on August 4, 2021, by occupational therapist, Kelsey L. Sipes. (Doc. 13, at 1). Sipes opined that Binner demonstrated the ability to occasionally lift up to 30 pounds, carry up to 20 pounds, push 67.4 pounds, pull 47.4 pounds; frequent sitting, standing, reach desk level, right fingering/fine motor, left fingering/fine motor, right simple grasp, lift simple grasp; occasional walking, stair-climbing, crouching, reaching floor level, stooping, reaching overhead, right firm grasp,

and left firm grasp. (Doc. 13, at 1-2). Sipes noted that Binner has the following deficits: "standing, walking, pushing/pulling and lifting at all levels due to decreased range of motion in the thoracic and lumbar spine and decreased range of motion and strength in the bilateral lower extremities." (Doc. 13, at 1, 8). Sipes concluded that Binner was not capable of working a full eight-hour workday. (Doc. 13, at 1).

Binner claims she has shown good cause for not submitting the evaluation to the ALJ prior to his decision and avers that the Functional Capacity Evaluation relates back to when she stopped working after her accident on August 15, 2016. (Doc. 12, at 27-28). However, it appears that Sipes evaluated Binner's functional abilities as of the date of her examination, on August 4, 2021, after the ALJ issued his decision on June 28, 2021, after the record had been extended on multiple occasions over a period of six months until the record had to be closed as it did not appear that the Functional Capacity Evaluation would be scheduled or completed. (Doc. 8-2, at 17; Doc. 13, at 1). Therefore, since Sipes' findings post-date the ALJ's decision, the Court finds that the Functional Capacity Evaluation is not material. *See Szubak*, 745 F.2d at 833. Moreover, Binner does not claim that the Functional Capacity Evaluation contains "new" material. (Doc. 12, at 28). Rather, Binner contends the matter should be remanded to have the Functional Capacity Evaluation to be considered as part of the record because Sipes opined that she is not able to engage in sustained work activity. (Doc. 12, at 28). Thus, the Court finds it is clear that much of the Functional Capacity Evaluation is not "new" because it is cumulative or duplicative of evidence already in the record. *See Szubak*, 745 F.2d at 833.

Finally, Binner has failed to articulate any good cause for her failure to provide this new evidence to the ALJ before his decision, especially where the ALJ repeatedly extended to record to allow Binner to attain such evidence until it became apparent that Binner would not be able to do so. (Doc. 12, at 27-28). The claimant bears the burden of submitting all evidence to the ALJ that relates to whether or not he or she is disabled, and this duty is ongoing throughout the administrative process. 20 C.F.R. § 404.1512(a)(1). Furthermore, no good cause is evident on the face of the Functional Capacity Evaluation or any of Binner's other submissions, either to the Appeals Council or to this Court. (Doc. 1; Doc. 12; Doc. 13); *see Martinez v. Kijakazi,* No. 3:20-CV-01550, 2022 WL 1062984, at *5 (M.D. Pa. Apr. 8, 2022).

Accordingly, Binner has failed to satisfy the statutory requirements for a sentence six remand, and the Court is precluded from further considering the additional evidence submitted to the Appeals Council by Binner after the ALJ's written decision had been issued on June 28, 2021.

V.   **CONCLUSION**

Based on the foregoing, the Commissioner's decision to deny Binner's application for disability benefits is **AFFIRMED**, final judgment is entered in favor of the Commissioner and against Binner, and the Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

Dated: **January 4, 2023**                    *s/ Karoline Mehalchick*
                                        **KAROLINE MEHALCHICK**
                                        **Chief United States Magistrate Judge**